IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


| | | |
|---|---|---|
| SUSAN APPERT, individually and on behalf of all others similarly situated, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | No.  08-CV-7130 |
| MORGAN STANLEY DEAN WITTER, INC., | ) ) ) | Honorable David H. Coar |
| *Defendant*. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Susan Appert brings an action against Defendant Morgan Stanley Dean Witter, Inc., for breach of contract due to Defendant's conduct in charging "Order Handling" fees in connection with securities transactions. Before the Court is Defendant's motion to dismiss the complaint in its entirety. Defendant argues that Plaintiff lacks a private right of action to enforce securities exchange rules, the violation of which forms the gravamen of Plaintiff's complaint. In the alternative, Defendant submits that Plaintiff's claim is precluded by the Securities Litigation Uniform Standards Act. For the reasons stated below, the motion is GRANTED.

**I.       Background**

Defendant Morgan Stanley Dean Witter is a financial services firm that provides, among other things, brokerage and investment advisory services. Plaintiff Susan Appert maintained an

investment account with Defendant from at least 1999 through September 2006. (Compl. ¶ 1.) Plaintiff seeks to represent a class of Defendant's customers who had an "Order Handling" fee retained or deducted from their accounts in connection with a securities transaction. (*Id.* ¶ 5.) Plaintiff alleges that the components of the fee ("handling," "postage," and "insurance") were not defined, and that Defendant never disclosed to the Plaintiff the actual costs incurred, if any, for handling, postage, or insurance relating to any transaction. (*Id.* ¶ 14.) Plaintiff further alleges that Defendant charged the "Order Handling" fee of $5.00 without regard to whether insurance was needed, the amount of postage required, the size of the order, the type of the order, or if handling took place. (*Id.* ¶ 15.) Plaintiff finally alleges that Defendant's retainer of $5.00 "Order Handling" fees was, in fact, unrelated to any actual handling, insurance, or postage associated with a specific transaction. (*Id.* ¶ 21.)

Plaintiff argues that language in her Client Account Agreement and trade confirmation slips impose on Defendant a contractual duty to follow rules of the National Association of Securities ("NASD") (now the Financial Industry Regulatory Authority, "FINRA") and its stock exchange ("NASDAQ"), requiring members to observe "high standards of commercial honor and just and equitable principles of trade" and to ensure that charges for miscellaneous services "shall be reasonable and not unfairly discriminatory between customers." (*Id.* ¶ 16-18.) Plaintiff asserts a claim for breach of contract against Defendant based on Defendant's practice of retaining "Order Handling" fees unrelated to handling, insurance, or postage, in contravention of these rules. (*Id.* ¶ 21.)

Among the common questions of law applicable to her proposed class, Plaintiff asks whether the NASD and NASDAQ rules were incorporated into account agreements; whether the fees violate "high standards of commercial honor" within the meaning of these rules; whether the

2

fees are "unreasonable" within the meaning of these rules; whether the violation of these rules breaches Defendant's contracts with Plaintiff and class members; and whether the fees are, in whole or in part, disguised profits. (*Id.* ¶ 9.)

II.     **Standard of Review**

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a complaint. *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir.1996). To survive the motion, a complaint need only describe the claim in sufficient detail to give the defendant fair notice of the claim and its basis. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007). A plaintiff's factual allegations must suggest a plausible, rather than merely speculative, entitlement to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic*, 550 U.S. at 555. In ruling on a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accepting as true the well-pleaded allegations, and drawing all reasonable inferences in plaintiff's favor. *Tamayo*, 526 F.3d at 1081.

III.    **Analysis**

   A. **Private Right of Action**

In asserting a claim for breach of contract, Plaintiff alleges that Defendant's practices violate NASD and NASDAQ rules requiring members to observe "high standards of commercial honor and just and equitable principles of trade" and to ensure that charges for miscellaneous

services "shall be reasonable and not unfairly discriminatory between customers." Defendant argues that Plaintiff's breach of contract claim asserts a private right of action where none exists. *See Spicer v. Chicago Bd. Of Options Exchange, Inc.*, 977 F.2d 255 (7th Cir. 1992) (holding no implied private right of action under the Securities Exchange Act against exchange members for violation of exchange rules).

Plaintiff concedes that no private right of action exists under NASD or NASDAQ rules. However, she argues that Defendant has incorporated the rules into their agreements and is therefore contractually obliged to follow them under state common law. Plaintiff's argument regarding the contractual incorporation of NASD and NASDAQ rules rests on two paragraphs in the terms and conditions of Plaintiff's trade confirmation sheets and Client Account Agreement. The former document contains the following clause:

> All transactions are subject to the rules, regulations, requirements, and customs of the exchange or market (and its cleaning agency, if any) where executed, the regulations of the Federal Reserve Board and the Securities and Exchange Commissions. (Ex. A at 2.)

The latter document states the following:

> Securities accounts are subject to federal and state law and the rules and customs of the NYSE, the NASD, and other industry self-regulatory organizations and exchanges. (Ex. A. at 3.)

The Second Circuit rejected Plaintiff's incorporation theory when it examined a similar claim in *Gurfein v. Ameritrade*, 312 Fed.Appx. 410, 413-14 (2nd Cir. 2009). The plaintiff in *Gurfein* contended that certain paragraphs from the terms and obligations of his customer agreement bound the defendant to comply with NASD, Securities and Exchange Commission

("SEC"), and American Stock Exchange ("AMEX") rules and regulations. One of these paragraphs mirrors the language at issue in the instant case. It reads, "[a]ll transactions under this Agreement are made subject to the constitution, rules, regulations, customs and usages of the various execution points and their clearinghouse, if any." *Id.* at 413.

The Second Circuit held that this language was a "notice provision." *Id.* at 413. While the provision informed the customer that her trades were constrained by the rules of governing regulatory agencies, it did not impose any additional obligations on the defendant. *Id.* at 413-14. The Second Circuit, like the Seventh, does not recognize an implied right of action against exchange members for violation of exchange regulations. *Id.* at 414 (citing *Brady v. Calyon Securities*, 406 F.Supp.2d 307, 312 (S.D.N.Y. 2005)). The Second Circuit was thus unwilling to permit private parties to plead around this finding. *Id.* at 414 ("Gurfein is precluded from creating a private cause of action for violations of these rules and regulations by fashioning her claim as one for breach of contract based on violations of rules and regulations impliedly incorporated into the agreement.") Essentially, as the *Gurfein* District Court phrased it, when "regulatory rules are incorporated into a customer agreement, they do not bring with them a right to sue for an infraction." *Gurfein v. Ameritrade, Inc.*, No. 04 Civ. 9526(LLS), 2007 WL 2049771, at *3 (S.D.N.Y. July 17, 2007).

The Seventh Circuit's dicta in *Kurz v. Fidelity Mgmt. & Research Co.*, 556 F.3d 639, 641-42 (7th Cir. 2009) complements the Second Circuit's position, leading this Court to conclude that it would rule similarly. In *Kurz*, former investors in portfolios managed by defendants asserted claims for breach of contract based on the defendants' alleged violations of their duty of best execution. This duty arose from NASD and NYSE rules that Plaintiff alleged were implied terms in their agreements. The Seventh Circuit rejected this argument, stating:

5

> Membership in NASD means being bound by its rules, but there may be no separate contract to that effect between members and NASD, or between one member (Fidelity) and another (Jeffries).
>
> NASD's rules themselves are part of the apparatus of federal securities regulation. NASD is a "self-regulatory organization"; its requirements are adopted by notice-and-comment rulemaking (not by the mechanism of contract, which requires consent by all affected persons) and are subject to review and change by the SEC. *See* 15 U.S.C. § 78o, § 78s. Some of these rules are the source of legal duties, and not revealing to investors a failure to comply with one's duties about transactions in their securities can lead to liability under the securities acts. *See O'Hagan*, 521 U.S. 642 (1979), and, e.g., *Basic Inc. v. Levinson*, 485 U.S. 224 (1988); *Dirks v. SEC*, 463 U.S. 646 (1983). This is the reasoning that led the SEC to think that Fidelity had violated the Investment Company Act and the Investment Advisers Act;[1] it is some distance from a state-law contract action. *Kurz*, 556 F.3d at 641-42.

Although the plaintiffs in *Kurz* were unable to point to any specific contract language indicating the defendant's promise to obey NASD rules, the Seventh Circuit's position on the ability to enforce such regulations through a state law contract action implies that such an effort would fail even if the plaintiffs could have produced supportive language. This position is consistent with the general prohibition against asserting an implied right of action under the guise of a state law claim, where no independent right of action has been found to exist. *See Indemnified capital Investments, SA. V, R.J. O'Brien & Assoc., Inc.*, 12 F.3d 1406, 1412 (7th Cir. 1993) (rejecting a state law claim for breach of fiduciary duty based on violation of National Futures Association rule, where Commodities Exchange Act did not provide an independent right of action); *In re Series 7 Broker Qualification Exam Scoring Litigation*, 548 F.3d 110, 112 (D.C. Cir. 2008) (prohibiting plaintiffs from raising a common law complaint against defendants based on duties arising under the Securities Exchange Act, where no federal right of action exists

---

[1] Kurz followed on the heels of a proceeding against defendants by the SEC under the Investment Company Act and the Investment Advisers Act. *See Kurz*, 556 F.3d at 640.

under the statute); *MM & S Fin., Inc. v. NASD*, 364 F.3d 908, 912 (8th Cir. 2004) ("[A]llowing MM & S to assert a private breach of contract claim [against NASD] would vitiate Congress's intent not to allow private rights of action against self-regulatory organizations for violating NASD's own rules."); *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1215 (9th Cir. 1998) (prohibiting common law breach of contract claim because allowing such cases "would allow states to define by common law the regulatory duties of a self-regulatory organization").

Finally, as in *Gurfein*, the language in Plaintiff's agreements does not appear to contractually obligate Defendant to abide be NASD and NASDAQ rules. Rather, the passive voice employed appears only to confirm that Plaintiff's accounts and transactions are generally governed by such regulations. Absent stronger language expressly binding defendant to an obligation, the paragraphs at issue here do not overcome Plaintiff's inability to enforce NASD's and NASDAQ's rules without an independent right of action.[2]

Because Plaintiff may not bring a common law cause of action based on the violation of exchange rules, for which Congress had not intended to create a private right of action, her breach of contract claim must be dismissed.

---

[2] Only one case cited by Plaintiff in her response, *Komanoff v. Mabon, Nugent, & Co.*, 884 F.Supp. 848 (S.D.N.Y. 1995) is relevant to her incorporation theory. The *Komanoff* court elected not to dismiss a similar breach of contract claim because, having no access to the contract language and seeing no evidence to the contrary, it accepted as true, in accordance with F.R.C.P. 12(b)(6), the plaintiff's allegation that the parties' contract required the defendant to comply with certain by-laws. Here, the alleged contractual language is before the Court. As such, it need not accept Plaintiff's allegations when they are conclusively contradicted by her own Complaint and exhibits.

**B. SLUSA Preemption**

Defendant also argues that Plaintiff's complaint should be dismissed on the grounds that her suit is precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). In 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA") to constrain federal securities class actions due to "perceived abuses of the class-action vehicle in litigation involving nationally traded securities." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006). Litigants subsequently sought to circumvent the PLSRA by bringing their class actions under state law in state court. Congress enacted SLUSA to prevent the use of such tactics. *See id.* at 82-83. The statute's core provision precludes certain class actions from being brought under state statutory or common law. 15 U.S.C. § 78bb(f)(1)-(2).

SLUSA preempts and precludes a claim if it: (i) is brought by a private party: (ii) is brought as a covered class action; (iii) is based on state law; (iv) alleges that the defendant misrepresented or omitted a material fact or employed a manipulative or deceptive device or contrivance; and (v) asserts that defendant did so in connection with the purchase or sale of a covered security. *See* 15 U.S.C.A. § 78bb(f)(1); *Erb v. Alliance Capital Mgmt.*, *L.P.*, 423 F.3d 647, 651 (7th Cir. 2005).

Plaintiff disputes the final two elements, arguing that she has pled a straightforward breach of contract claim under Illinois law unrelated to the sale of a covered security. In her response, Plaintiff seeks to characterize the complaint as a claim "for a breach of contractual duty based upon an overcharge, not for the non-disclosure of fees." (Pl.'s Response at 13.) In arguing such distinctions, Plaintiff's pleadings are typical of this class of complaint. *See* 2 Harold S. Bloomenthal, Sec. Law Handbook § 31:21 (2008) ("Contractual and breach of

fiduciary claims against broker-dealers have played a significant role in determining the extent to which, if at all, SLUSA can be avoided by not alleging misrepresentations or deceptive devices in connection with the purchase or sale of securities."). The range of district court opinions on the matter reveals that SLUSA preemption tends to hinge on variations in the facts. *See Magyery v. Transamerica Financial Advisers, Inc.*, 315 F.Supp.3d 954, 959 (N.D. Ind. 2004) (extensively examining cases "all over the map" on the issue of SLUSA preemption); 3 Thomas Lee Hazen, Law Sec. Reg. § 12.5 (6th ed. 2009).

As a general rule, litigants cannot avoid SLUSA preemption by bringing claims that effectively incorporate securities claims under state law theories. *See Kurz v. Fidelity Management Research Co.*, No 07-CV-709, 2008 WL 2397582, at *3 (S.D. Ill. 2008), aff'd, 556 F.3d 639 (7th Cir. 2009)*; Rabin v. JP Morgan Chase Bank*, No. 06 C 5452, 2007 WL 2295795, at *6 (N.D. Ill. Aug. 3 2007). Consequently, when analyzing SLUSA preclusion, courts are guided by the substance rather than the form of a claim. *See id.*

Plaintiff in her Complaint alleges that the "Order Handling" fee charged by Defendant included undisclosed costs "unrelated to any actual 'handling, insurance, or postage' associated with the specific transaction." (Compl. ¶ 21.) Plaintiff specifically complains that Defendant failed to define "handling, insurance, or postage," and that Defendant "never disclosed to Plaintiff the actual costs incurred, if any." (*Id.* ¶ 14.) Additionally, Plaintiff raises as a common question applicable to the class "Whether the 'Order Handling' fees retained by MSDW are, in whole or in part, disguised profits." (*Id.* ¶ 9.) These factual allegations form the basis of Plaintiff's breach of contract claims. Ultimately, Plaintiff alleges that Defendant's overcharges, in reality undisclosed profits, constituted a breach of their contractual agreement.

9

In disputing whether the fourth element of SLUSA preemption has been satisfied, Plaintiff argues that her "lone allegation that there was no disclosure of the actual costs . . . is neither an element of a breach of contract claim, nor is it material to the Plaintiff's action." (Pl.'s Response at 13.) However, where the factual predicate for a claim is alleged misrepresentation or omission of material facts or the use of a manipulative or deceptive device in connection with the purchase or sale of covered securities, the claim is precluded under SLUSA. *See Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 300 (3d Cir. 2005) (rejecting, in case styled as a breach of contract claim, plaintiff's argument that "because 'misrepresentation' is not an essential legal element of his claim under Pennsylvania contract law, the factual allegations of misrepresentation included in the complaint are irrelevant to the SLUSA inquiry."); *Dommert v. Raymond James Financial Services*, No. 06 CV 102, 2007 WL 1018234, at *8 (E.D. Tex. Mar. 29, 2007) (finding allegations of misrepresentation and omission where, in a breach of fiduciary duty claim, Defendants allegedly failed to disclose key information about fees and financial gain retained by Defendants); *Disher v. Citigroup Global Markets, Inc.*, 487 F.Supp.2d 1009, 1018-19 (S.D. Ill. 2007) (citing supportive opinions across other circuits).

The formal elements of a breach of contract claim notwithstanding, Plaintiff's Complaint alleges that Defendant misrepresented the basis of the "Order Handling" fee by incorporating "unrelated" charges, while omitting information clarifying the actual costs incurred. (Compl. ¶ 14-15, 21.) The Complaint implies that the allegedly vague term "handling, insurance, and postage," which Defendant failed to define with specificity, serves as a deceptive device that conceals "disguised" profits. (*Id.* ¶ 9, 14-15.) Such allegations satisfy the fourth element of SLUSA preemption.

Plaintiff also disputes the fifth element of SLUSA preemption. That is, Plaintiff denies that Defendant's "Order Handling" fees were charged "in connection with" the purchase or sale of a covered security. In support of her argument, Plaintiff relies heavily on *Spielman v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2001 WL 1182927 (S.D.N.Y. Oct. 9, 2001), appeal dismissed on other grounds, 332 F.3d 116 (2d Cir. 2003). In *Spielman*, the District Court found that a claim challenging undisclosed transaction fees was not preempted by SLUSA because the alleged fraud concerned the broker's commission structure, rather than the investment quality of any securities. *Id.* at *4-5. In its interpretation of the SLUSA statute, the District Court concluded that alleged misrepresentations must "relate to the value of the securities sold or the consideration received" in order to be "in connection with" the purchase or sale of covered securities. *Id.* at *3-4.

The rationale of *Spielman* is suspect after *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006), and *SEC v. Zandford*, 535 U.S. 813 (2002), which adopted an expansive construction of the term "in connection with." The Supreme Court in *Dabit* reasoned that when Congress wrote into SLUSA the same phrase used in § 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934, it intended to incorporate the settled judicial interpretations of the language as well. *See Dabit*, 547 U.S. at 85-86. For further definition of the term "in connection with" in the 10b-5 context, the Court pointed to its ruling in *SEC v. Zandford*, 535 U.S. 813. In *Zandford*, the Court stated that the phrase "in connection with" should be construed broadly so as to "effectuate [the statute's] remedial purposes." *Id.* at 819. The Court further held that it was not necessary for the fraud to relate to a misrepresentation about the value of a security. *Id.* at 825. Rather, to meet the "in connection with" requirement, it was sufficient that the fraudulent acts "coincided with" the sale of securities. *Id.* at 822. The *Zandford* Court

11

ultimately found that a broker's alleged sale of a client's securities with the undisclosed intent to misappropriate the proceeds met this bar. *Id.* at 825. Following *Zandford*, the Second Circuit noted that the District Court's holding in *Spielman* was "suspect." *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 49 n.18 (2nd. Cir. 2005), *rev'd on other grounds*, 547 U.S. 71 (2006).

Post-*Dabit*, courts have consistently found SLUSA preemption applicable in broker-dealer claims based on allegations of deception or material omissions or misrepresentations concerning transaction fees, even where plaintiffs had painstakingly avoided alleging fraud. *See, e.g.*, *Beckett v. Mellon Investor Services, LLC,* 329 Fed.Appx. 721 (9th Cir. 2009) (claim alleging non-disclosure and unauthorized charging of trading fees); *Broadhead Ltd. Partnership v. Goldman, Sachs & Co.*, No. 06-CV-009, 2007 WL 951623 (E.D. Tex. Mar. 26, 2007) (claim alleging that defendant's failure to disclose itemized fees associated with bond purchases and sales enabled unjustified financial gain); *Dommert v. Raymond James Financial Services, Inc.*, 2007 WL 1018234 (claim alleging failure to disclose material information about a fee arrangement and other financial incentives). A fair number of courts applied SLUSA to fee disputes prior to *Dabit*, as well. *See, e.g.*, *Miller v.Nationwide Life Ins. Co.*, 391 F.3d 698, 702 (5th Cir. 2004) (breach of contract claim regarding unauthorized charging of trading fees for transactions defendant had allegedly represented were free); *Behlen v. Merrill Lynch*, 311 F.3d 1087 (11th Cir. 2002) (claim alleging that defendant marketed certain securities to investors for the purpose of reaping excessive fees and commissions).

Accordingly, this Court is convinced that allegations of the use of deceptive devices or material misrepresentations or omissions bearing on the terms of sale for securities trades meets the lenient standard set forth in *Zandford* and thus *Dabit* for fraud "in connection with" the

12

purchase or sale of covered securities. *See generally* 3 Thomas Lee Hazen, Law Sec. Reg. § 12.5 (6th ed. 2009) ("The 'in connection with' element of a Rule 10b-5 violation is not limited to fraud relating to the merits of a particular security; it can also relate to a general course of dealing with regard to securities transactions. Thus, material misstatements or omissions relating to an arrangement that was an integral part of the securities transaction will satisfy the requirement that the statement be in connection with the purchase or sale of a security.")

In contrast, all cases cited by Plaintiff in support of a narrower reading of "in connection with" have either been superseded by *Dabit* or *Zandford*, or are inapposite to the instant case. *See, e.g.*, *Spielman*, 2001 WL 1182927 (suspect after *Dabit* and *Zandford*); *Green v. Ameritrade Inc.*, 279 F.3d 590 (8th Cir. 2002) (no SLUSA preemption where alleged misrepresentations related to a real-time quote service, rather than the purchase or sale of securities); *Magyery*, 315 F. Supp. 2d 954 (declining to apply SLUSA preemption due to lack of scienter).[3] As such, this Court does not consider them persuasive.

By alleging that Defendant misrepresented and omitted important information concerning the nature of its "Order Handling" fees, Plaintiff has alleged material misrepresentations or omissions and the use a manipulative or deceptive device in connection with the purchase or sale of a covered security. Her claim is therefore preempted and precluded by SLUSA and must be dismissed. *See Kircher v. Putnam Funds Trust*, 547 U.S. 633, 643-44 (2006).

---

[3] The Seventh Circuit requires scienter for federal securities liability. *See Kurz v. Fid. Mgmt. & Research Co.*, 556 F.3d 639, 642 (7th Cir. 2009). "Scienter" is a "mental state embracing intent to deceive, manipulate or defraud." *Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976). Although Plaintiff has not raised the issue of scienter, its existence can be implied from the "element of deception" suggested by the allegations of misrepresentation in the Complaint. *See Burns v. Prudential Securities*, 116 F.Supp.2d 917, 921 (N.D.Ohio 2001). Of particular relevance to this finding is Defendant's alleged and repeated concealment of both the nature of its charges and the actual costs of order handling, over the course of numerous transactions with thousands of clients. *See Denton v. H&R Block Financial Advisors, Inc*., 01 C 4185, 2001 WL 1183292, at *3-4 (N.D. Ill. Oct. 4, 2001) (finding scienter implied upon allegations of numerous intentional misrepresentations over the course of nine years, as opposed to a single incident); *Magyery*, 315 F.Supp.3d at 962 (noting that scienter, while absent in the instant case because the defendant did not conceal his actions and acted on an isolated occasion, has been implied by other courts where unauthorized activity was concealed from the investor on several occasions).

**IV. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Court DENIES as moot all pending motions.

Enter:

/s/ David H. Coar

_____
David H. Coar
United States District Judge

Dated: **November 6, 2009**