# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUSAN APPERT, individually and on behalf of all others similarly situated, ) ) ) *Plaintiff*, ) v. ) MORGAN STANLEY DEAN WITTER, INC., ) ) *Defendant*. ) ) | No. 08-CV-7130 Honorable David H. Coar |

## MEMORANDUM OPINION AND ORDER

Plaintiff Susan Appert ("Appert") brings an action against Defendant Morgan Stanley Dean Witter, Inc. ("Morgan Stanley"), for breach of contract due to Morgan Stanley's conduct in charging "Order Handling" fees for the delivery of confirmation slips in securities transactions. Before the Court is Morgan Stanley's motion to dismiss Appert's first amended complaint [Dkt. 65]. Morgan Stanley argues that Appert fails to state a claim for breach of contract or unjust enrichment. In the alternative, Morgan Stanley submits that Appert's claim is precluded by the Securities Litigation Uniform Standards Act. For the reasons stated below, the motion is GRANTED.

I.  Background

Morgan Stanley is a financial services firm that provides, among other things, brokerage and investment advisory services. Plaintiff Susan Appert maintained an investment account with

Morgan Stanley from at least 1999 through September 2006. Appert seeks to represent a class of Morgan Stanley customers who had an "Order Handling" fee deducted from their accounts upon the delivery of certain trade confirmations, in accordance with their Client Account Agreements. The contract states, "[o]ther miscellaneous account fees and charges include: handling, postage, and insurance (HPI) at $2.35 per transaction . . . . All fees are subject to change and you will be notified in the event of any changes." Am. Compl. Ex. B at 3. In 2002, Morgan Stanley raised the fee from $2.35 to $5.00 per applicable confirmation. In 2005, Morgan Stanley again raised the fee to $5.25 per confirmation. Appert alleges that the fee was applied without regard to whether insurance was needed, the amount of postage required, the size of the order, the type of the order, or if handling took place. Appert asserts that Defendant's retainer of "Order Handling" fees was, in fact, unrelated to any actual handling, insurance, or postage associated with a specific transaction. The Client Account Agreement is governed by New York law.

## II.   Standard of Review

A complaint's factual allegations must suggest a plausible, rather than merely speculative, entitlement to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007). When ruling on a motion to dismiss, the court generally considers only the well-pleaded allegations of a complaint, construed in the light most favorable to the plaintiff. *Tamayo*, 526 F.3d at 1081. However, contracts attached as exhibits may also be considered when ruling on a motion to dismiss. *See INEOS Polymers, Inc. v. BASF Catalysts*, 553 F.3d 491, 498 (7th Cir. 2009); *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005); Fed. R. Civ. P. 10(c). Where the terms of an attached contract conflict with the plaintiff's allegations,

2

the contract controls. *See Rosenblum v. Travelbyus.com Ltd.,* 299 F.3d 657, 661 (7th Cir. 2002) ("The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material.") (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1327 at 766 (1990)); *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.,* 179 F.3d 523, 529 (7th Cir. 1999) ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.") (internal citations omitted).

### III. Analysis

#### A. Breach of Contract Claim

In asserting a claim for breach of contract, Appert alleges that the actual costs for the handling, postage, and insurance of the trade confirmation delivery were substantially less than the fee charged by Morgan Stanley. Appert asserts that the average total cost of these services amounted to approximately 42 cents per confirmation. Appert argues that Morgan Stanley therefore overcharged her and every potential class member by retaining $2.35, $5.00, and $5.25 per delivery. Appert submits that this overcharge constitutes a breach of the Client Account Agreement, which she attached to her complaint.

To state a claim for breach of contract under New York law, a plaintiff must allege (a) the existence of a contract; (b) performance of the plaintiff's obligations; (c) the defendant's failure to perform; and (d) resulting damage. *Furia v. Furia*, 116 A.D.2d 694, 695 (N.Y. App. Div. 1986). Accordingly, Appert would have stated a claim entitling her to relief had she alleged

that Morgan Stanley failed to perform its obligations by either charging an amount higher than the sum outlined in the contract, or increasing the "Order Handling" fee without notifying Appert beforehand. *See* Compl. Ex. B at 3. Yet, Appert does not allege that Morgan Stanley did either of these things. Rather, she expresses dissatisfaction with the amount of profit Morgan Stanley gained from each handling charge. New York law does not recognize such a claim.

In *Jacobs v. Citibank, N.A.*, 61 N.Y.2d 869 (N.Y. 1984), the plaintiffs sued their bank for imposing service charges for bounced checks that exceeded the actual cost of processing them. The New York Court of Appeals held:

> Plaintiffs' . . . claim that the imposition of these charges constitutes a breach by defendant of the terms of the parties' agreements because they exceed the actual cost of processing the overdrafts is without merit. When plaintiffs opened their accounts, each of them agreed to pay the charges specified for the services listed in the agreement, including the processing of overdrafts. Plaintiffs also agreed that those charges would be subject to change. Inasmuch as plaintiffs do not now contend that they were not notified of subsequent changes in the schedule of fees, they cannot be heard to say that defendant breached the agreements.

*Id.* at 871.[1] Misleadingly, Appert appeals to language in *Jacobs* pertaining to a separate provision of the parties' agreement, which vested the defendant with "discretion to determine what amount is necessary to compensate itself for services rendered" after a check bounced. *Id.* Where a company has the ability to exercise such discretion, allegations that the charges were "grossly disproportionate to processing costs usually incurred . . . or otherwise imposed in bad faith" state a cognizable claim. *Id.* The Client Account Agreement did not grant

---

[1] Even under a New York statute prohibiting deceptive business acts, allegations that a company's fully-disclosed shipping and handling charges exceeded its actual costs fails to state a cognizable claim. *See Taylor v. BMG Direct Marketing, Inc.*, 749 N.Y.S.2d 31, 32 (N.Y. 2002) ("[A] disclosure that a specified amount will be charged for shipping and handling cannot cause a reasonable consumer to believe that such an amount necessarily is equal to or less than the seller's actual shipping and handling costs.").

Morgan Stanley the discretion to belatedly determine on a case-by-case basis the amount of its "Order Handling" fee, however. As a result, the language in *Jacobs* relied upon by Appert to defend her breach of contract claim is inapplicable.

As in *Jacobs*, Appert assented to the terms of the Client Account Agreement, which described service charges accurately. Notably, the Agreement did not oblige Morgan Stanley to assess "Order Handling" fees that precisely mirrored the costs of shipping, handling, or insurance. Rather, the Agreement cited a fixed sum to be charged and Morgan Stanley followed through on its obligation. Appert's breach of contract claim therefore fails and must be dismissed.

### B. Unjust Enrichment Claim

In the alternative, Appert argues that Morgan Stanley was unjustly enriched by the alleged overcharge. In New York, a plaintiff may not recover under a theory of unjust enrichment if "the existence of a contract is undisputed" and the scope of the contract "clearly covers the dispute between the parties." *Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987). As such, Appert cannot plead unjust enrichment unless a dispute over the existence of a contract or its coverage exists. *See Watts v. Jackson Hewitt, Inc.*, 579 F.Supp.2d 334, 354 (E.D.N.Y. 2008) ("When a contract's meaning is unclear or ambiguous, an alternative theory of unjust enrichment is permitted."); *Union Bank, N.A. v. CBS Corp.*, No. 08 Civ. 08632, 2009 U.S. Dist. LEXIS 48816, at *19-24 (S.D.N.Y. June 9, 2009) (declining to dismiss plaintiff's unjust enrichment claim when the court was unable to determine as a matter of law that the parties' contracts governed the instant dispute).

At no point does Appert – or Morgan Stanley, for that matter – claim that the Client Account Agreement was unenforceable.[2] Rather, Appert apparently argues that the Agreement fails to cover the instant dispute because the language pertaining to the processing fee was "vague." Appert finds fault with the contract language because it allegedly did not specify how insurance costs factored in, and to which confirmations the fee applied. After assessing the terms of the Agreement, the Court finds as a matter of law that the contract clearly covers the dispute between the parties. Specifically, it dictates the fee amount that Morgan Stanley could properly assess for the processing of confirmation slips. The Agreement is not silent, unclear, or ambiguous as to how much Morgan Stanley could charge as an "Order Handling" fee. As such, Appert cannot state a claim for unjust enrichment. *See King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, No. 09 Civ. 3980, 2009 WL 5033960, *7 (S.D.N.Y. Dec. 23, 2009) (dismissing claim that $100 return fee unjustly enriched defendant because it exceeded actual costs, where the controlling agreement was undisputedly enforceable).

**C. SLUSA Preemption**

Morgan Stanley also argues that Plaintiff's complaint should be dismissed because her lawsuit is precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). SLUSA preempts and precludes a claim if it: (i) is brought by a private party: (ii) is brought as a covered class action; (iii) is based on state law; (iv) alleges that the defendant misrepresented or omitted a material fact or employed a manipulative or deceptive device or contrivance; and (v)

---

[2] A contract is unenforceable if its terms are "vague, indefinite or incomplete in respect to any material fact or condition." *Campbell v. WABC Towing Corp.*, 356 NY.S.2d 455, 457 (N.Y. 1974); *see also Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1990) ("To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.") (citation omitted). As such, in order to succeed in challenging the enforceability of the Client Account Agreement, Appert must admit that the transaction fee was material to the agreement. She does not do so. To the contrary, Appert specifically alleges that "the Order handling fee was not objectively material to any class members' investment decision." Am. Compl. ¶ 14.

asserts that defendant did so in connection with the purchase or sale of a covered security. *See* 15 U.S.C.A. § 78bb(f)(1); *Erb v. Alliance Capital Mgmt.*, *L.P.*, 423 F.3d 647, 651 (7th Cir. 2005).

As argued by Appert, it is indeed possible to plead a breach of contract claim premised on the overcharge of securities transaction fees without triggering SLUSA preemption. If, for example, the parties' Client Account Agreement prohibited the charging of processing fees, or Morgan Stanley charged more than the contractual amount, or the company failed to notify Appert of a fee increase, the ensuing lawsuit would not hinge on the existence of material misrepresentations or omissions, or the use of deceptive devices. Rather, it would stand alone as a breach of contract claim at common law.

The problem here is that Appert has not pleaded such a claim. The complaint fails to state any cognizable causes of action. To the extent that Appert sues Morgan Stanley for disguising profits as processing fees, the substance of Appert's lawsuit resembles a category of legal actions that other courts have deemed preempted by SLUSA.

At heart, Appert takes issue with the fact that Morgan Stanley charged a fee that was misleadingly attributed to the shipping, handling, and insurance of securities transaction confirmation slips, yet was allegedly greater than the actual cost of those services. In other words, Appert alleges that Morgan Stanley misrepresented or omitted material facts, or used a manipulative or deceptive device, in connection with the purchase or sale of covered securities. Claims with such factual predicates are preempted by SLUSA, regardless of whether they are presented in common law terms. *See, e.g.*, *Rowinski v. Salomon Smith Barney, Inc*., 398 F.3d 294, 300 (3d Cir. 2005); *Dommert v. Raymond James Financial Services*, No. 06 CV 102, 2007 WL 1018234, at *8 (E.D. Tex. Mar. 29, 2007); *Disher v. Citigroup Global Markets, Inc*., 487

7

F.Supp.2d 1009, 1018-19 (S.D. Ill. 2007). Accordingly, courts have consistently found SLUSA preemption applicable in broker-dealer claims based on allegations of deception or material omissions or misrepresentations concerning transaction fees. *See, e.g.*, *Beckett v. Mellon Investor Services, LLC,* 329 Fed.Appx. 721 (9th Cir. 2009); *Broadhead Ltd. Partnership v. Goldman, Sachs & Co.*, No. 06-CV-009, 2007 WL 951623 (E.D. Tex. Mar. 26, 2007); *Dommert*, 2007 WL 1018234; *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 702 (5th Cir. 2004); *Behlen v. Merrill Lynch*, 311 F.3d 1087 (11th Cir. 2002).

Appert argues that the processing fee was immaterial to any securities transaction. SLUSA would rightly not apply under such circumstances. However, in the absence of a freestanding legal claim, it is unclear what body of law entitles Appert to relief for an immaterial misrepresentation.[3] As the Second Circuit noted, "[i]f brokerage firms are slightly inflating the cost of their transaction fees, the remedy is competition among the firms in the labeling and pricing of their services, not resort to the securities fraud provisions." *Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539, 541 (2d. Cir. 1996). If the processing fee was material to Appert's securities transaction, then her suit is preempted by SLUSA for the reasons set forth in this Court's Memorandum Opinion and Order dismissing Appert's original complaint. *See* 11/6/09 Mem. Op. and Order, at 8-13. If the fee was immaterial to the agreement between the parties, Appert is left without legal recourse.

**IV.    Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. This case remains CLOSED.

---

[3] A claim for common-law fraud, for instance, requires a false representation of material fact. *See Kerusa Co. LLC v. W10z/515 Real Estate Ltd. Partnership*, 12 N.Y.3d 236, 242 (N.Y. 2009).

8

Enter:

/s/ David H. Coar
_____

David H. Coar
United States District Judge

Dated: **December 9, 2010**